UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY L. KIRK,

       Plaintiff,

v.                                                                     Case No. 5:03-cv-151
                                                                     Hon. Wendell A. Miles

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).[1]

       Plaintiff was born on October 15, 1969, graduated from high school and completed a Certified Nursing Assistant (CNA) program (AR 84, 107, 417-18).[2] Plaintiff alleges that she became disabled on January 13, 1998 (AR 84). She had previous employment as a CNA, a bartender and restaurant worker (shift supervisor, prep cook, waitress) (AR 110-17). Since March 2005, plaintiff has provided day care at her home for her niece and nephew (age 5 and 6 at that time) for up to 40 hours per week (with the help of her daughters) for the Department of Human Services (AR 150). Plaintiff identified her disabling condition as: dizziness; off-balance; neck and head pain; numbness in arms, hands, legs and lips; nausea; head nodding; confusion; depressed; and, "loss of

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

mind control (thought process)" (AR 101).

This case has an unusual procedural history. Plaintiff filed her application for SSI on June 11, 2001 (AR 8, 24, 41). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on March 20, 2003 (AR 41-49). This decision was approved by the Appeals Council on July 28, 2003 (AR 58-60). Plaintiff filed an appeal in this court on September 30, 2003. The court remanded the case back to the Commissioner on April 28, 2004, to locate or reconstruct the missing claims file. The agency apparently lost the file and tape of the previous administrative hearing (AR 412-13). The remand resulted in a new hearing held on May 10, 2005 (AR 410-42). The ALJ entered a second decision denying benefits on December 28, 2005 (AR 8-17). This decision reviewed a substantial number of medical records that reflect plaintiff's treatment after the 2003 decision. The 2005 decision was approved by the Appeals Council, and became the final decision of the Commissioner.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court

does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (AR 48).[3] Second, the ALJ found that plaintiff had severe impairments of Arnold-Chiari malformation, Type I; depression and migraines (AR 15).[4] At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift or carry a maximum of 20 pounds and 10 pounds frequently. In an eight-hour workday, the claimant can stand or walk for two hours and sit for at least six hours. The claimant needs a sit/stand option with the capability to perform work sitting or standing. She can only occasionally bend, twist, or turn. The claimant can do no

---

[3] The ALJ made this determination in the 2003 decision (AR 48).

[4] "Arnold-Chiari malformation" is defined as "a congenital anomaly in which the cerebellum and medulla oblongata, which is elongated and flattened, protrude down into the spinal canal through the foramen magnum." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 434. Defendant points out that "Type I is the least severe with prolapse of the cerebellar tonsils into the spinal canal without elongation of the brainstem." Defendant's Brief at 3 n. 1.

>  climbing, crawling, squatting or kneeling.  She can use no air or vibrating tools.  The claimant can not work at unprotected heights or around unprotected moving machinery.  She can only do unskilled work.

(AR 16).  The ALJ concluded that plaintiff was unable to perform any of her past relevant work (AR 16).  The ALJ also found that plaintiff's allegations regarding her limitations are not totally credible (AR 16).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 16). The ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform in the Lower Peninsula of Michigan.  These include the following positions at the light exertional level: hand packager (3,500 jobs); sorter (700 jobs); inspector (2,700 jobs); and assembler (15,000 jobs) (AR 16).  A number of these jobs also exist at the sedentary exertional level: hand packager (252 jobs); sorter (134 jobs); inspector (662 jobs); and assembler (8,336 jobs) (AR 16).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 16-17).

## III. ANALYSIS

Plaintiff raises two issues on appeal:

> **A.** **The substantial evidence on the record demonstrated that controlling weight was not given to the treating and examining medical professionals.**

Plaintiff contends that the ALJ gave no reasons for discounting the opinions of her treating physician, Deborah Dell, D.O. and an evaluation by an examining psychologist, Tim Strang, Ph. D.

### 1. Dr. Dell

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. Dell was plaintiff's primary care physician from before 1999 until December 2002 (AR 203-34, 273-313, 323). Dr. Dell noted plaintiff's complaints of headaches and vertigo on several occasions (AR 212, 216, 219, 224, 276, 279, 282). Plaintiff had surgery to alleviate the symptoms of the Arnold-Chiari Malformation in July 1998 (AR 316-18). Plaintiff's contention is

apparently based upon Dr. Dell's statement in April 1999 that, i.e., "I do feel that this patient's dizziness is keeping her from holding a job and certainly she is not going to be able to work with the problems of pain in her neck and constant vertigo" (AR 323).

Although Dr. Dell was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, it was not necessary for the ALJ to give Dr. Dell's April 1999 statement controlling weight.

Furthermore, the ALJ reviewed plaintiff's treatment history with Dr. Dell (AR 9-10), her subsequent primary physician Jeffrey Joslin, M.D. (AR 10-11), and other treating physicians. The ALJ noted that plaintiff's July 2, 2001 examination was unremarkable; that on August 1, 2001, Dr. Dell reported that plaintiff had a very mild left sided eyelid droop, was morbidly obese and had a lot of tension and tenderness in her neck; and on September 13, 2001, plaintiff was taking Prilosec for her gastroesophageal reflux (AR 9-10). The ALJ did not specifically mention Dr. Dell's treatment of plaintiff's vertigo in January, April, and May 2002 (AR 279-85). However, the ALJ mentioned Dr. Joslin's February 2003 notation that plaintiff had good control of the vertigo with Antivert and his November 2003 notation that her depression was well controlled by Paxil (AR 10,

373, 381).[5]

Plaintiff does not explain how the ALJ improperly discounted the medical evidence presented by plaintiff's treating physicians. The ALJ's summary of the medical evidence indicates that he considered the entire medical record:

> In summary, the medical record establishes the claimant has Arnold-Chiari malformation, Type I; depression; and migraines. However, on August 7, 2001 the claimant had normal cervical spine x-rays. On January 28, 2002 the claimant reported her depression was fairly well controlled. On June 6, 2002 it was noted the claimant had a normal Romberg test with her eyes open, was able to walk over and around obstacles, and was able to ascend/descend steps using hand rail and step over step pattern. On November 2, 2002 the claimant had a normal sleep study. On February 21, 2003 Dr. Joslin noted the claimant had good control of vertigo with Antivert. On November 18, 2003 Dr. Joslin stated the claimant's chronic neck pain was well controlled and her depression was well controlled with Paxil. On February 19, 2004 the claimant stated she was doing well with Methadone. She also alleged her shoulder pain had been very manageable. It was noted in the Pain Clinic progress notes that the claimant had only minimal to no tenderness across the shoulder and cervical spine. On April 1, 2005 the claimant reported her medications were making her more functional. She also stated she wanted to put counseling on hold. The claimant does not need a structured living arrangement and does not have any psychotic symptoms. She baby-sits a five and six year old. The claimant prepares their breakfast, gets them dressed, takes them to school and picks them up from school. She reported she went grocery shopping, did laundry, took care of her lawn, prepared meals, watched television, went fishing, and visited relatives. The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.

(AR 13) (citations omitted). In this summary of the medical record, the ALJ adequately explains his reasons for concluding that plaintiff is not disabled.

---

[5] The court notes that portions of Dr. Joslin's handwritten notes are incomprehensible.

### 2. Dr. Strang

Plaintiff also contends that the ALJ ignored the evaluation performed by Dr. Strang, specifically (1) Dr. Strang's observation that plaintiff "tended to minimize her affective disorder" of major depressive disorder, and (2) his assignment of a Global Assessment of Functioning (GAF) score of 50, which indicated serious symptoms or impairments. Plaintiff's Brief at 8-9.

#### a. Dr. Strang's report

Dr. Strang examined plaintiff on September 19, 2001 (AR 235-40). He diagnosed her as suffering from "[m]ajor depressive disorder, single episode, severe without psychotic features" (AR 239). The ALJ reviewed Dr. Strang's report, and noted the doctor's conclusion that plaintiff exhibited adequate social skills (AR 12-13). The ALJ also cited Dr. Strang's report to support his conclusion that plaintiff had moderate limitations in her ability to concentrate and complete tasks in a timely manner (AR 13). The ALJ adopted a number of the limitations as set forth in the RFC assessment and psychiatric review technique form (PRTF) completed by the DDS physician (AR 12, 250-67). Many of these limitations are consistent with Dr. Strang's report, noting that plaintiff suffered from major depression and nicotine dependence, and that her mental impairments caused some moderate limitations (AR 235-40, 250-67).

Plaintiff bases her claim on Dr. Strang's observation that she tended to minimize her affective disorder. Plaintiff's Brief at 8-9. Ths single observation does not form the basis for a disability claim. *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted). While plaintiff relies on this particular statement, the court is struck by the absence of

symptoms or limitations mentioned by Dr. Strang in the balance of the report.  Dr. Strang found plaintiff in contact with reality with no psychotic symptoms (AR 237).  The doctor found no evidence of hallucinations, delusions or beliefs in unusual powers (AR 237).  Her affect was "mildly to moderately depressed and consistent with the interview topics" (AR 238).  She was oriented, "her thoughts showed organization and coherence," and she was able to manage her benefit funds (AR 235-40).

### b. Plaintiff's GAF score

Plaintiff also relies on Dr. Strang's assignment of a GAF score of 50 as establishing her disability.  Plaintiff's Brief at 9.  The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness.  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a  person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."  *Id.*

Here, plaintiff's GAF score of 50 lies at the top of the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a

job)." *Id.*[6] The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996); *Hardaway*, 823 F.2d at 927; Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings").

As previously discussed, the ALJ explicitly adopted some of Dr. Strang's findings (AR 10). In addition, the ALJ relied on the opinions of the DDS physicians that reviewed plaintiff's medical records (AR 12). An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence).

Accordingly, the ALJ did not err in his evaluation of the opinions expressed by Drs. Dell and Strang.

---

[6] It is unclear to the court how plaintiff fits this GAF range. Nothing in Dr. Strang's opinion indicates the existence of serious symptoms as indicated in the examples of this GAF range. For example, the doctor explicitly found that plaintiff did not have suicidal thinking, she exhibited adequate social skills, is especially close to her sibling, cares for her school-aged children, and goes with other people on shopping excursions (AR 236-37).

> **B.      A restricted range of light work is not reflected in the record as a whole and the claimant should have been found disabled under the medical-vocational guidelines.**

Plaintiff presents no argument to support her contention that she should have been found disabled under the medical-vocational guidelines or "grids." The grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *See Taylor v. Commissioner of Social Security*, No. 98-4504, 1999 WL 1073656 at * 1 (6th Cir. Nov. 17, 1999); *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) coincide with the elements as set forth in the grids. *See Taylor*, 1999 WL 1073656 at *1; *Kirk v. Secretary of Health and Human Servs.*, 667 F. 2d 524, 533-35 (6th Cir. 1981). When the findings of fact coincide with those four factors, the grids direct a conclusion as to disability or non-disability and vocational testimony is not required. *See Ziegler v. Sullivan*, No. 89-1708, 1990 WL 6954 at *5 (6th Cir. Feb. 1, 1990); *Kirk*, 667 F. 2d at 528-30.

In the present case, the ALJ found that plaintiff suffered from severe non-exertional impairments of depression and migraines (AR 11). Where a claimant suffers from a non-exertional impairment that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, the grids should not be used to determine disability, but rather used as a framework for the making disability determination. *See Abbott*, 905 F.2d at 926. Contrary to

plaintiff's statement of error, the ALJ did not use the grids in determining plaintiff's disability; rather, he relied on the testimony of the vocational expert using the grid at Rule 202.21 as a framework for this decision (AR 14-15). *See* 20 C.F.R., Part 404, Subpt. P, App. 2. Rule 202.21 provides that a younger individual (age 18 to 49), with a maximum sustained work capability limited to light work, with at least a high school education, and previous work experience of skilled or semiskilled (skills not transferable), is not disabled. Even if the ALJ had relied solely on the grids, and found that plaintiff had a maximum sustained work capability limited to sedentary work, she would still be determined "not disabled" under the grids. *See* 20 C.F.R., Part 404, Subpt. P, App. 2, Rule 201.28. Accordingly, there is no basis for plaintiff's claim that she is disabled under the grids.

In her argument, plaintiff apparently disagrees with the ALJ's hypothetical question posed to the vocational expert (VE) because it omitted her allegations of non-exertional impairments (frequent naps, severe headaches at least twice a week which require her to sleep and the need to take frequent breaks). Plaintiff's Brief at 12-13. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also*

*Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The first hypothetical question posed to the VE assumed an individual with limitations similar to plaintiff's RFC (AR 438-39). The VE testified that such a person could perform about 21,900 jobs at the light exertional level and 9,384 jobs at the sedentary exertional level (AR 439-40). When asked to assume that plaintiff's testimony was "fully credible," the VE assumed the following additional limitations: she naps every day, at times all day; has severe headaches a couple of days a week that require her to sleep to relax her muscles; and has the need to take breaks approximately half of the time (i.e., on task for half of the time and off task equal amounts of time) (AR 440-41). The VE testified that these additional limitations would preclude all work (AR 440-41).

The ALJ apparently declined to include these additional limitations in the hypothetical question, because he found them to be unsubstantiated. Specifically, the ALJ found that plaintiff's claims regarding her naps and headaches were not supported by the medical record:

> The undersigned considered whether the claimant's medically determinable impairment [sic] could reasonably be expected to cause disabling symptomology and concluded that they could. However, after careful consideration of the record, the undersigned finds that the claimant's testimony, with respect to the extent and severity of her impairments and resulting functional limitations, is not credible. The claimant testified that she hardly uses the computer but reported earlier to Dr. Strang that she used the computer during the day to play games. The claimant testified that she takes a nap everyday and sometimes naps all day, but never reported it to any of her medical sources. The claimant testified that she has severe headaches twice per week but never reported it to her medical sources. On April 8, 2002, Dr. Dell reported the University of Michigan Vestibular Center was concerned by a possible magnification of symptoms by the claimant.

(AR 12) (internal citations omitted). Accordingly, the ALJ could properly discount plaintiff's testimony regarding her constant headaches, need to take naps, and need to take breaks.

**IV.     Recommendation**

        I  respectfully recommend that the Commissioner's decision be affirmed.


Dated:  December 18, 2006                /s/ Hugh W. Brenneman, Jr.
                                                  Hugh W. Brenneman, Jr.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).